**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LaWANDA KING, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 13-CV-7967** |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR CO., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, LaWANDA KING, through counsel, the Moran Law Group, complains of Defendant FORD MOTOR CO., as follows:

**INTRODUCTION**

1.     LaWanda King (hereinafter "Plaintiff" or "King") brings this action for redress against her former employer, the Ford Motor Company, (hereinafter "Defendant" or "Ford"), for retaliatory discharge and violations of her rights under the Family and Medical Leave Act, sexual harassment and violation of the Illinois Whistleblower Act.

**JURISDICTION**

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(1-4), conferring original jurisdiction on this court of any civil action to recover damages or to secure equitable relief under the Constitution, treaties, or any Act of Congress, including those providing for rights pursuant to the Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2601, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended under 42

U.S.C. §§ 2000 *et seq*.  The Court has supplemental jurisdiction over the state law claim pleaded in this complaint pursuant to 28 U.S.C. § 1367.

3.    Plaintiff has complied with all statutory prerequisites of her Title VII claims, having filed a charge of retaliation with the Illinois Department of Human Rights and Equal Employment Opportunity Commission on April 22, 2013, within 300 days of the retaliatory act. (A true and accurate copy of Plaintiff's IDHR/EEOC filing is attached hereto as **EXHIBIT A**). On August 2, 2013, Plaintiff obtained a *Notice of Right to Sue* letter from the U.S. Equal Employment Opportunity Commission.  (A true and accurate copy of the EEOC letter of right to sue is attached hereto as **EXHIBIT B**).  Plaintiff has filed her Complaint within 90 days of receipt of the EEOC Notice.

## VENUE

4.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391, as all events described herein took place in the Northern Judicial District and both parties reside, or are located within the Northern Judicial District of Illinois.

## PARTIES

5.    Plaintiff is a citizen and resident of the state of Illinois and a citizen of the United States.  Plaintiff has worked for Ford Motor Company since October, 1992.  At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

6.    Defendant is an international corporation, headquartered at 1 American Road, in Dearborn, Michigan.  At all times relevant to this Complaint, Defendant was an "employer" as defined by 29 U.S.C § 2611(4).

## FACTS

7.    King was hired by Ford on October 5, 1992.

8.    On or about August 16, 2010, King was transferred to Ford's Chicago Assembly Plant, located at 12600 S. Torrence Ave, Chicago, IL 60633.  King was assigned to the "Shop Area" within the Chassis Dept as a Headlight Aimer.

9.    Between March and April of 2011, King fainted and complained to Ford's Health and Safety Department regarding excessive exhaust fumes and lack of proper ventilation.  King was forced to take three days of leave under the FMLA to seek medical attention and testing.

10.    Shortly thereafter, in approximately July, 2011, King began being passed over for job opportunities she had applied for and was more qualified to perform than the accepted applicant.

11.    Between July 26, 2011 and August 3, 2011, King was on approved FMLA leave.

12.    Upon King's return to work on August 4, 2011, she was accused by another Ford employee (Natalie Derringer) in their Labor Relations Department of having failed to properly file the paperwork necessary for her FMLA leave.  King was threatened by Derringer with a 30 day suspension without pay for her alleged failure to follow Ford's internal rules.

13.    On August 4, 2011, King spoke with a company doctor who confirmed that all the necessary paperwork had been previously filed with Ford's Medical Department.   King returned to Labor Relations and informed Derringer that all her paperwork was present in the Medical Department as per procedure.  Derringer requested that King bring copies of the FMLA paperwork from the Medical Department to her as soon as possible.

14.    On August 9, 2011, King received all the documents she had previously filed for her FMLA leave from the Medical Department.  King took the documents to Derringer in Labor

Relations as per instruction.

15.      Derringer proceeded to discipline King by suspending her for 30 days without pay for an alleged failure to not timely file the FMLA paperwork with the Labor Relations Department.  King grieved the suspension, but has received no hearing and no relief has been forthcoming.

16.      On September 7, 2011, King returned to work from her 30 day suspension.

17.      On December 13, 2011, while at work and on her way to the restroom, King was stopped by her supervisor Michael Reese.  Reese proceeded to tell King that she was "an attractive woman," asked her if she knew that he was "into black women," and told her that he "could do that body some good."  King responded that she was in a relationship and continued on her way.

18.      On December 14, 2011, Reese repeatedly walked past King's work station and made numerous sexually charged comments to her.  Reese stated that he was "going to give you (King) a few days to think about it," and later asked King "did you think about it?" in reference to his comments of December 13, 2011.

19.      On December 15, 2011 King reported Reese' behavior to Labor Relations.  Reese alleged that King had sworn at him and King was sent home for the rest of the day without pay. King then made a call to Ford's National Harassment Hotline and made a formal complaint.

20.      The next day, December 16, 2011, King was informed by Supervisor Reese that she was to report to the Motor Line until further notice.  King asked why she was being reassigned, but Reese would not give her an answer.

21.      King reported to the Motor Line and requested the necessary safety equipment,

-4-

which was not given to her.  King was injured while working on the Motor Line, informed her supervisor Perry Pollack, but denied a medical pass.  After waiting 2 hours for a medical pass, King went to the Medical Department for treatment.  After returning to the Motor Line, King was disciplined by Pollack and told to go home without pay for allegedly walking off her station without informing him.  King grieved this suspension, but no response was ever forthcoming.

22.     After being sent home from work on December 16, 2011, King again called Ford's National Harassment Hotline and made another complaint, also alleging that she was being retaliated against for her first complaint.

23.     Between December 19 and 21, 2011, King was taken out of her Motor Line station and told to sweep and clean-up everyday until further notice.  Her requests to work overtime (which had been routinely granted to this point) was denied.

24.     On or about January 3, 2012, King had surgery and was on approved FMLA leave.

25.     On January 13, 2012, while still on approved FMLA leave, King was told to report to work immediately or be fired.  King was told that she was on a "Five Day Notice" list and Ford considered her to be AWOL, despite the approved FMLA leave.  King went to the Ford plant and after speaking with Natalie Derringer, was immediately sent back home and told to report when her FMLA leave was over.

26.     Upon her return to work on February 15, 2012, King's new supervisor was Valerie Taylor.  King experienced no problems or issues until Reese returned to the work area on February 22, 2012.

27.     Reese was acting as an interim Middle Production Supervisor over Taylor, and

upon his return, Taylor's demeanor and attitude towards King changed. Taylor began declining King's requests for overtime and generally began closely monitoring King's work, something she had not done before Reese arrival.

28.     In response to this behavior after Reese' return, King again called the Ford Harassment Hotline and made a report. King informed the Hotline representative that she would be filing a complaint with the EEOC because matters were getting worse, there was no confidentiality, she believed she was being retaliated against for both protected activity and for reporting unsafe working conditions. The Hotline representative advised King to file a report with the Human Resources Manager, Tony Dodson. King made several efforts to speak with Dodson but never received any response until after she filed a complaint with EEOC.

29.     On March 26, 2012, King's position was again changed, and she was assigned to the Suspension Line for training. At this time, Ford shorted King's paycheck, prompting her to file with the EEOC.

30.     On April 11, 2012, King was accused by Valorie Taylor of taking pictures with her cell-phone and was sent home without pay.

31.     On April 12, 2012, King reported for work at the normal time. Taylor told her to leave the floor and report to Labor Relations. At 9:30 a.m., King was informed that she would be sent home that day for allegedly violating a policy forbidding cell-phones on the floor, a policy that Ford did not enforce for any other employees. Upon receiving the one-day suspension from Labor Relations, King went back to her station and received an additional unpaid two-day suspension from Taylor for the same alleged infraction.

32.     On April 18, 2012, King was confronted by the Area Manager and told that Taylor

-6-

had submitted additional complaints about King. The complaints were utterly false and fabricated. As a result, King was permanently moved to the motor/suspension line and was constantly denied overtime opportunities.

33. Shortly after meeting with her Area Manager, King began to experience problems with payroll. King would consistently not be paid for hours work and be forced to grieve the issue in order to receive her paycheck.

34. Between April and November of 2012, King was reassigned, often on a daily basis, from location to location and job to job, without ever being given a permanent station or the "general utility" pay raise that is supposed to accompany floating employees. Often times, King was made to sweep and clean the floor locations.

35. On November 26, 2012, King was diagnosed with Fibromyalgia and placed on medical leave until December 14, 2012.

36. King returned to work on December 17, 2012, worked the entire week, was not paid for the time worked, and was denied her request to work overtime by Reese.

37. Between January 14-17, 2013, King was marked as AWOL while actually on approved vacation and approved personal leave, a situation she was forced to grieve.

38. Despite being on approved vacation and personal leave, on January 23, 2013, King was suspended without pay for two weeks for the alleged AWOL status on August 4, 2011, December 5, 2012 and between January 14-17, 2013. King grieved the suspension, but no hearing ever took place.

39. On February 19, 2013, King was diagnosed with "Mortons Neuroma" on her foot. King reported to Ford that she needed minor surgery and would return to work on February 25,

2013. King reported back to work on February 25 and 26 and took approved vacation leave for the 27th and 28th (for which she was to be paid). To date, King has not been paid for either the days worked or the approved vacation dates.

40.      On March 1, 2013, King was forced to file yet another grievance over her pay being shorted and being incorrectly marked as AWOL.

41.      The stress and repeated targeting of King for discipline and creation of a hostile work environment by Ford management members caused King to have a nervous breakdown.

42.      On March 4, 2013, King took a medical leave pursuant to FMLA.

43.      On March 7, 2013, King submitted the appropriate forms for FMLA medical leave to the Medical Department and the Benefits representative, then faxed the appropriate forms to Unicare as well and received confirmation.

44.      On March 12, 2013, King was contacted by her union representative John Cullum, and informed that a five-day termination notice had been issued by Natalie Derringer, which in effect meant that if King did not return to work within five days, she would be terminated.

45.      King contacted the Medical Department at Ford, Unicare, and her physician and explained the situation. At this time, the five-day notice was rescinded.

46.      On March 28, 2013, King received another text message from her union representative John Cullum, and informed that another five-day termination notice had been issued for her.

47.      March 29, 2013 is a Ford holiday.

48.      On April 1, 2013 King contacted three labor representatives and left messages as well as the Medical Department and Unicare (who deals with benefits and disability pay). King

was informed by the Ford Medical Department that her medical leave dates appeared to be incorrectly documented and that she needed to have her physician provide an extension to avoid being terminated. Unicare verified with King that the correct dates for her leave had been submitted.

49.    On April 2, 2013, King's doctor called her to confirm that the medical leave extension documents, extending King's leave through April 30, 2013 had been faxed to both the Ford Medical Department and Unicare.

50.    Later that day, on April 2, 2013, King was left a voicemail message by her co-workers informing her that she had been terminated for failure to respond to the five-day notice issued by Ford on March 28, 2013.

51.    Ford's Medical Department claimed that it had never received King's doctor's extension documents on April 2, 2013. King had her doctor re-fax the documents sent earlier that day.

## COUNT I
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2615

52.    Plaintiff restates and reincorporates paragraphs 1-51 as if stated fully herein.

53.    Defendant has interfered with, restrained, and denied the exercise of or the attempt to exercise, the rights afforded Plaintiff under the Family and Medical Leave Act.

54.    Defendant has discriminated against Plaintiff by discharging her for opposing the interference, restraint and denial of the rights afforded Plaintiff under the Family and Medical Leave Act.

WHEREFORE, in light of the foregoing, Plaintiff LaWanda King respectfully requests

-9-

this Honorable Court enter judgment against Defendant Ford Motor Company as follows:

1. For an order declaring that Ford Motor Company's actions and practices violated 29 U.S.C. § 2601 *et seq*., permanently enjoining Ford Motor Company (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee for asserting their rights under this statute, or participation in this lawsuit;

2. For an order directing Ford Motor Company to pay LaWanda King compensatory damages and award her reasonable attorney's fees and costs;

3. For an award of punitive damages in an amount commensurate with the financial ability of Ford Motor Company to pay;

4. For an order directing Defendants to remove all negative memoranda, documents, files, comments, letters, etc., from LaWanda King's personnel file and Labor Relations file and,

5. Grant any and all other relief that this Court deems necessary.

## COUNT II
## VIOLATION OF 42 U.S.C. § 2000e-2
## SEX HARASSMENT

55. Plaintiff restates and reincorporates paragraphs 1-51 as if stated fully herein.

56. Defendant, through it's agents and employees, has unlawfully harassed and discriminated against Plaintiff with respect to her compensation, terms, conditions, and privileges of employment, based on her sex, female.

57. Defendant, through it's agents and employees, has unlawfully harassed and discriminated against Plaintiff in a way which would deprive or tend to deprive her of

employment opportunities or otherwise has adversely affected her status as an employee, based on her sex, female.

WHEREFORE, in light of the foregoing, Plaintiff LaWanda King respectfully requests this Honorable Court enter judgment against Defendant Ford Motor Company as follows:

1. For an order declaring that Ford Motor Company's actions and practices violated 42 U.S.C. § 2000e-2 *et seq.*, permanently enjoining Ford Motor Company (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee for asserting their rights under this statute, or participation in this lawsuit;

2. For an order directing Ford Motor Company to pay LaWanda King compensatory damages and award her reasonable attorney's fees and costs;

3. For an award of punitive damages in an amount commensurate with the financial ability of Ford Motor Company to pay;

4. For an order directing Defendants to remove all negative memoranda, documents, files, comments, letters, etc., from LaWanda King's personnel file and Labor Relations file and,

5. Grant any and all other relief that this Court deems necessary.

**COUNT III**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-3**

58. Plaintiff restates and reincorporates paragraphs 1-51 as if stated fully herein.

59. Defendant retaliated against Plaintiff in violation of 42 U.S.C. § 2000e-3 for opposing discriminatory acts under 42 U.S.C. § 2000e-2 with her employer, it's Harassment

-11-

Hotline, and for filing charges with the federal Equal Employment Opportunity Commission.

60.    Defendants retaliation includes, but is not limited to, the filing of knowingly false and malicious disciplinary infractions; baseless suspensions without pay; seeking Plaintiff's termination based upon knowingly false charges of absenteeism, removing Plaintiff from her work position and making her perform other duties for which she was entitled to higher pay without proper compensation, and eventually terminating Plaintiff.

WHEREFORE, in light of the foregoing, Plaintiff LaWanda King respectfully requests this Honorable Court enter judgment against Defendant Ford Motor Company as follows:

1.    For an order declaring that Ford Motor Company's actions and practices violated 42 U.S.C. § 2000e-3 *et seq.*, permanently enjoining Ford Motor Company (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee for asserting their rights under this statute, or participation in this lawsuit;

2.    For an order directing Ford Motor Company to pay LaWanda King compensatory damages and award her reasonable attorney's fees and costs;

3.    For an award of punitive damages in an amount commensurate with the financial ability of Ford Motor Company to pay;

4.    For an order directing Defendants to remove all negative memoranda, documents, files, comments, letters, etc., from LaWanda King's personnel file and Labor Relations file and,

5.    Grant any and all other relief that this Court deems necessary.

-12-

## COUNT IV
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER'S ACT
### 740 ILCS 174/1 *et. al.*

61.     Plaintiff restates and reincorporates paragraphs 1-51 as if stated fully herein.

62.     Plaintiff was retaliated against by Defendant after making protected disclosures to the Defendant's Harassment Hotline and the EEOC.

63.     Plaintiff disclosed that she reasonably believed that Defendant's agents and employees were violating state and federal laws, rules or regulations prohibiting discrimination in employment.

64.      Defendants retaliation includes, but is not limited to, the filing of knowingly false and malicious disciplinary infractions; baseless suspensions without pay; seeking Plaintiff's termination based upon knowingly false charges of absenteeism, removing Plaintiff from her work position and making her perform other duties for which she was entitled to higher pay without proper compensation, and eventually terminating Plaintiff.

WHEREFORE, in light of the foregoing, Plaintiff LaWanda King respectfully requests this Honorable Court enter judgment against Defendant Ford Motor Company as follows:

1.     Compensatory damages in terms of salary or any salary differential until her expected time of retirement;

2.     Any applicable back pay for wrongful suspensions;

3.     Any other compensatory damages available, including but not limited to litigation costs, expert witness fees, and reasonable attorney's fees.

4.     Reinstatement; and

5.      Grant any and all other relief that this Court deems necessary.

**JURY DEMAND**

Plaintiff demands trial by jury.


Respectfully submitted,

By:/s/ Matthew T. Layman
        One of Plaintiff's Attorneys


THE MORAN LAW GROUP
309 WEST WASHINGTON STREET
SUITE 900
CHICAGO, ILLINOIS 60606
(312)630-0200